Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| FELISA RIVERO CRESPO<br><br>Parte Recurrente<br><br>v.<br><br>JUNTA DE DIRECTORES Y CONSEJO DE TITULARES COND. EL ATLÁNTICO Y OTROS<br><br>Parte Recurrida | TA2026RA00144 | *Revisión Administrativa* procedente del Departamento de Asuntos del Consumidor (DACo)<br><br>Querella Núm. C-SAN-2024-0019968<br><br>Sobre: Condominio (Ley Núm. 129 de 16 de agosto de 2020, según enmendada) |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera

Rodríguez Flores, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de abril de 2026.

Comparece por derecho propio la Sra. Felisa Rivero Crespo (señora Rivero Crespo) mediante recurso de revisión administrativa instado el 27 de marzo de 2026. Solicita que revoquemos la *Resolución en Reconsideración* emitida el 11 de marzo de 2026, y notificada al día siguiente, por el Departamento de Asuntos del Consumidor (DACo). En virtud del referido dictamen, el DACo ratificó su *Resolución* emitida el 25 de febrero de 2026, en la que declaró *no ha lugar* a la querella incoada por la señora Rivero Crespo y ordenó su cierre y archivo.

La parte recurrida, Consejo de Titulares del Condominio El Atlántico y su Junta de Directores, presentó su *Alegato en Oposición a Recurso de Revisión* el 27 de abril de 2026.

Evaluado el recurso, la oposición y los documentos que fueron adjuntados, a la luz del derecho aplicable, *confirmamos* la resolución recurrida.

# I.

El 29 de agosto de 2024, la señora Rivero Crespo, titular del apartamento 710 del Condominio El Atlántico (Condominio), presentó ante el DACo una querella contra el Consejo de Titulares del Condominio y su Junta de Directores. También incluyó a Popular, Inc. d/b/a deShow, titular del apartamento 810 del referido complejo de unidades de vivienda. En cuanto a Popular, Inc. d/b/a deShow, la señora Rivero Crespo adujo que las filtraciones de agua provenientes del apartamento 810 provocaron serios daños a su hogar, por los cuales solicitó compensación, además del costo de la reparación de la estructura. Al Consejo de Titulares del Condominio y su Junta de Directores le imputó no haber atendido su reclamo de manera diligente y oportuna, lo que, según alegó, contribuyó a agravar los daños ocasionados por las mencionadas filtraciones.

El DACo celebró las vistas administrativas, y tras aquilatar la totalidad de la prueba, el 25 de febrero de 2026, dictó una *Resolución*[1] en la que formuló las siguientes determinaciones de hechos:

1. La parte querellante Felisa Rivero Crespo es titular del apartamento número 710 del Condominio El Atlántico, en virtud de la Escritura núm. 4 sobre compraventa otorgada el 9 de junio de 1994, en Bayamón, Puerto Rico, ante Notario Público según surge de la Certificación de Propiedad Inmueble expedida por el Registro Inmobiliario Digital del Gobierno de Puerto Rico.

2. El Condominio El Atlántico se encuentra sometido al régimen de propiedad horizontal.

3. Según las alegaciones contenidas en la querella, el 3 de julio de 2024 comenzaron a registrarse filtraciones en el apartamento de la querellante.

4. Ante esta situación, para el 4 de julio de 2024, la parte querellante le notificó a la administradora del

---

[1] Véase, expediente electrónico del caso TA2026RA00144 en el Sistema Unificado de Manejo y Administración de Casos–Tribunal de Apelaciones (SUMAC-TA), Entrada 1, Anejo, *Resolución.*

condominio sobre el problema de filtraciones y solicitó comunicarse con el titular del apartamento 810.

5. La parte co-querellada, Popular, Inc. d/b/a deShow, era el titular del apartamento 810 a la fecha del 3 de julio de 2024.

6. En o alrededor del 22 de julio de 2024, el problema de filtraciones en el apartamento de la querellante había cesado.

7. Ante los reclamos de la parte querellante ante la parte querellada, el 29 de agosto de 2024 presentó la querella de epígrafe para solicitar los siguientes remedios y citamos:

> *Que deShow pague los arreglos en el techo de mi apartamento y los daños ocasionados en la alfombra y libros. Son responsables por negarse a cerrar la llave de paso de un apartamento deshabitado que inundaba el mío.*
>
> *Que se establezca a quién corresponde cerrar la llave de paso de un apartamento deshabitado cuando se filtra en el de abajo. ¿A la administración? ¿A DeShow? ¿A ambos? Entiendo que ambos tenía[n] la responsabilidad de hacerlo.*
>
> *Que se me informe qué hizo DeShow con las tuberías del 810 el día 22 de julio, después de ese arreglo dejó de filtrarse. Se han negado a darme el informe del plomero.*
>
> *Que el seguro de DeShow responda por los daños sufridos tanto como por costo de la reparación antes de 30 días.*
>
> *Que en cualquier comunicación conmigo por parte de DeShow se guarde el debido decoro: se han reído, mofado, me han gritado y faltado el respeto.*

8. Luego de varios trámites procesales, el 18 de agosto de 2025, la parte co-querellada, Popular, Inc. d/b/a deShow, por conducto de su representante legal, presentó ante este Departamento una solicitud de desestimación por falta de jurisdicción sobre la materia. Dicha parte co-querellada aduce que la controversia trabada por la parte querellante constituye una disputa entre copropietarios por lo que este Departamento no tendría jurisdicción para atender la querella.

9. El 26 de agosto de 2026, la parte co-querellada, Consejo de Titulares del Condominio El Atlántico y su Junta de Directores presentó una solicitud de desestimación de la querella, planteando que este Departamento carecería de jurisdicción sobre la materia por tratarse de una controversia entre titulares del condominio y que las alegaciones contenidas en la querella van dirigidas a la exigencia de una

indemnización por daños causados por la parte co-querellada, Popular, Inc. d/b/a deShow y no contra el Consejo de Titulares y su Junta de Directores.

10. En la vista sobre el estado de los procedimientos celebrada el 26 de agosto de 2025 se le concedió a la parte querellante un término para fijar su posición respecto a la solicitud de desestimación por falta de jurisdicción sobre la materia presentada por Popular, Inc. d/b/a [de]Show y la solicitud de desestimación presentada por la parte co-querellada, Consejo de Titulares del Condominio El Atlántico y su Junta de Directores.

11. El 27 de agosto de 2025, la parte querellante presentó una enmienda a la querella para incluir a toda la parte querellada como responsable de los daños reclamados.

12. El 23 de septiembre de 2025, este Departamento, mediante Orden, determinó no acoger la enmienda a la querella hasta tanto la parte querellante cumpliera con lo ordenado en cuanto a fijar su posición respecto a las solicitudes de desestimaciones presentadas por la parte querellada.

13. El 25 de septiembre de 2025, la parte querellante presentó una Moción en Oposición a la alegada falta de jurisdicción y en reconsideración de enmienda. En su escrito, la parte querellante plantea que el apartamento 810, el cual estuvo cerrado por espacio de 15 años, fue el causante de la inundación en su apartamento.

14. El 2 de octubre de 2025, la parte querellante presentó ante este Departamento una moción en la que reitera que el problema de filtración que afectó su apartamento fue ocasionado por la Junta de Directores, que no atendió su reclamo y por ende, le causó daños.

15. El 29 de octubre de 2025 la parte querellante notificó a este Departamento que los daños causados en su apartamento ascendían a la cantidad de $5,500.00.

16. En la vista sobre el estado de los procedimientos celebrada el 4 de febrero de 2026, la parte querellante sostuvo que no procedía conceder la desestimación solicitada porque la parte querellada es responsable del problema de filtración en su apartamento y no supo precisar si las filtraciones provenían de un elemento común. No obstante, admitió la querellante que el problema de filtraciones provino del apartamento 810, tras reconectarse el servicio de agua. Adicional, notificó la parte querellante que las filtraciones en su apartamento cesaron el 22 de julio de 2024, por lo que su reclamo se limita a una acción de daños solamente.[2]

---

[2] *Íd.*

Así pues, el DACo concluyó que la controversia trabada por la señora Rivero Crespo contra Popular, Inc. d/b/a deShow constituía una disputa entre titulares de un complejo sometido al régimen de propiedad horizontal, con el propósito de exigir una indemnización por los presuntos daños causados por el apartamento 810. La agencia manifestó que, de conformidad con la Regla 23 del Reglamento Núm. 9386 de 6 de junio de 2022, conocido como *Reglamento de Condominios*, las querellas entre titulares están excluidas de la jurisdicción del DACo, siendo el Tribunal de Primera Instancia el foro con jurisdicción para ventilar las causas de acción entre los titulares. En virtud de lo anterior, el DACo resolvió que carecía de jurisdicción para atender la reclamación incoada por la señora Rivero Crespo en contra de Popular, Inc. d/b/a deShow.[3]

Por lo que se refiere al Consejo de Titulares del Condominio y su Junta de Directores, el DACo coligió que, en realidad, la señora Rivero Crespo no había presentado reclamación alguna en contra de éstos, ya que para lo único que los mencionó en la querella fue para cuestionar sobre quién recaía la responsabilidad de cerrar la llave de paso en caso de una filtración; es decir, en la querella no se impugnó determinación, acción u omisión alguna de los cuerpos directivos del condominio. El foro administrativo entendió que emitir algún pronunciamiento en cuanto a dicho cuestionamiento constituiría una opinión consultiva, ya que la propia querellante había admitido que las filtraciones provenían del apartamento 810 y habían cesado desde el 22 de julio de 2024. Siendo ello así, el DACo resolvió que la controversia se había tornado académica, privando de jurisdicción a dicho foro para entender en el asunto. Luego, en su disposición final, el DACo declaró *no ha lugar* a la querella y ordenó su cierre y archivo.[4]

---

[3] *Íd.*
[4] *Íd.*

En desacuerdo con lo resuelto, el 10 de marzo de 2026, la señora Rivero Crespo presentó ante el DACo una *Moción de Reconsideración*[5]. En ella, razonó que la reclamación entablada contra el Consejo de Titulares del Condominio y su Junta de Directores no era académica. Según su teoría, los daños reclamados no se limitaban a un acabado interior dentro de una unidad de vivienda privada, sino que se trata de un deterioro progresivo del techo y la losa, los cuales, a su juicio, son elementos estructurales del inmueble, destinados a un uso comunal y cuya reparación corresponde al Consejo de Titulares del Condominio. Esgrimió que presentó su petición de restauración ante el órgano directivo y no fue atendida. En relación con ello, expuso que, a tenor con la norma jurídica vigente, el DACo es el foro con jurisdicción para atender los reclamos en los que se impugnan las acciones u omisiones del órgano directivo del inmueble, como lo fue la negativa del Consejo de Titulares del Condominio y su Junta de Directores a atender su reclamo de reparación. Por tanto, la señora Rivero Crespo arguyó que no procedía desestimar la querella en cuanto al Consejo de Titulares del Condominio y su Junta de Directores. Así, requirió al DACo restituir la querella en contra de éstos.

En la *Resolución en Reconsideración*[6] emitida el 11 de marzo de 2026, y notificada al día siguiente, el DACo declaró *no ha lugar* a la solicitud de reconsideración de la señora Rivero Crespo. Por tanto, revalidó su resolución de 25 de febrero de 2026.

Insatisfecha aún, el 27 de marzo de 2026, la señora Rivero Crespo recurrió ante nos y adujo que el foro administrativo incurrió en los siguientes señalamientos de error:

> Erró DACO al concluir que la responsabilidad de la administración del condominio no fue planteada oportunamente en el procedimiento administrativo.

---

[5] *Íd., Moción de Reconsideración.*
[6] *Íd.,* Entrada 1, Apéndice, *Resolución en Reconsideración.*

Erró DACO al determinar que la losa y el techo afectados no constituyen un elemento estructural del inmueble.

Erró DACO al concluir que la controversia se tornó académica una vez cesó la filtración, ignorando la existencia de daños continuos activos en el techo y losa.

Por su parte, en su *Alegato en Oposición a Recurso de Revisión,* el Consejo de Titulares del Condominio El Atlántico y su Junta de Directores, arguye, en primer lugar, que el recurso incumple con varios de los requisitos dispuestos en el Reglamento de este Tribunal para su perfeccionamiento, por lo que no deberíamos atenderlo en sus méritos.[7] En la alternativa, propone que debemos confirmar la resolución recurrida porque se basa en la totalidad del expediente administrativo y no se rebatió la presunción de legalidad y corrección que la cobija.

En cuanto a la desestimación solicitada, resolvemos que el incumplimiento con los requisitos de que el recurso incluya un índice detallado de materias, la falta de mención sobre la existencia de otro recurso pendiente, o de una exposición de las fuentes jurídicas que resultare "robusta" para la parte recurrida, no impiden que podamos atender el recurso en sus méritos. Por tanto, declaramos *No Ha Lugar* la solicitud de desestimación incoada por el Consejo de Titulares del Condominio El Atlántico y su Junta de Directores.

## II.

### A.

Es norma firmemente establecida que los tribunales apelativos han de conceder gran consideración y deferencia a las decisiones de los organismos administrativos. Ello, dado que las agencias administrativas cuentan con vasta experiencia y conocimiento especializado en cuanto a los asuntos que les han sido

---

[7] *Íd.,* Entrada 2, *Alegato en Oposición a Recurso de Revisión,* a la pág. 10.

encomendados.[8]  Así, al igual que otras decisiones administrativas, a los procesos de adjudicación de subastas le aplican los mismos principios de deferencia en cuanto al alcance de la revisión judicial.[9]

Como resultado, la decisión de una agencia administrativa gozará de una presunción de legalidad y corrección que será respetada, siempre que la parte que la impugna no produzca evidencia suficiente para rebatirla.[10]

En cuanto a las determinaciones de hecho que realiza una agencia, éstas serán sostenidas por el tribunal si se basan en evidencia sustancial que obra en el expediente administrativo.[11]  Por evidencia sustancial se entiende "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[12]  Por lo tanto, la parte afectada por la decisión administrativa deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada en evidencia sustancial.[13]

Ahora bien, respecto a las conclusiones de derecho de las decisiones de las agencias administrativas, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, señala que éstas pueden ser revisadas en todos sus aspectos por el tribunal.[14]

Al respecto, recientemente, en *Vázquez et al. v. DACo*[15], el Tribunal Supremo hizo eco de la decisión del foro federal en el caso

---

[8] *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839 (2021), citando a *OCS v. Universal*, 187 DPR 164, 178 (2012); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 821 (2012); *Pagán Santiago et al. v. ASR*, 185 DPR 341, 358 (2012).

[9] *Accumail PR v. Junta Sub. AAA,* 170 DPR 821, 828-829 (2007).

[10] *Transp. Sonnell, LLC v. Jta. Subastas ACT,* 214 DPR 633, 648 (2024); *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012).

[11] *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, 3 LPRA sec. 9675.

[12] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Otero v. Toyota*, 163 DPR 716, 728 (2005).

[13] *Otero v. Toyota*, supra, pág. 728.

[14] Sec. 4.5 de la LPAU, 3 LPRA sec. 9675.

[15] *Vázquez et al. v. DACo*, 216 DPR ___ (2025), 2025 TSPR 56 (opinión de 21 de mayo de 2025).

*Loper Bright Enterprises v. Raimondo*[16], y determinó que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. En *Vázquez,* el Tribunal Supremo enfatizó la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, *supra.* Puntualizó que, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. Con ello, nuestro Tribunal Supremo pautó el fin de la deferencia absoluta a las apreciaciones de derecho arribadas por las agencias administrativas.[17] En fin, delimitó que la interpretación de la ley es una tarea que le corresponde a los tribunales y como corolario, los tribunales deben revisar las conclusiones de derecho en todos sus aspectos. Ello, como mecanismo interpretativo del poder judicial.[18]

Por consiguiente, la deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales.[19]

---

[16] *Loper Bright Enterprises v. Raimondo,* 603 US 369, 144 S. Ct. 2244, 219 L.Ed.2d 832 (2024).
[17] *Vázquez et al. v. DACo,* supra.
[18] *Íd.*
[19] *Super Asphalt v. AFI y otro,* 206 DPR 803, 819 (2021); *Torres Rivera v. Policía de PR,* 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 712, 744-745 (2012).

## B.

La jurisdicción es el poder o autoridad que tiene un tribunal o una agencia administrativa para considerar y decidir los casos y las controversias ante su consideración.[20] Al igual que los foros judiciales, las agencias administrativas no tienen discreción para asumir jurisdicción donde no la hay.[21]

Para dilucidar la jurisdicción de una agencia administrativa respecto a un asunto particular, es necesario examinar el poder que la Asamblea Legislativa —a través de su ley habilitadora— le delegó para determinar, ya sea mediante adjudicación o reglamentación, los derechos y obligaciones de quienes están sujetos a su ámbito de acción.[22] Ello así porque una agencia administrativa no puede asumir jurisdicción sobre una actividad, materia o conducta cuando no está claramente autorizada por ley para ello.[23] Es decir, las agencias administrativas solamente pueden ejercer los poderes que su ley habilitadora expresamente les ha otorgado y aquellos que sean indispensables para llevar a cabo su encomienda primordial, deberes y responsabilidades.[24]

La Ley Núm. 5 de 23 de abril de 1973, según enmendada, conocida como la *Ley Orgánica del Departamento de Asuntos del Consumidor,* 3 LPRA sec. 341 *et seq.,* creó al DACo como una agencia especializada con el propósito primordial de vindicar e implantar los derechos del consumidor.[25] Este organismo tiene el deber de implementar una estructura de adjudicación administrativa mediante la cual se considerarán las querellas de los

---

[20] *JJJ Adventure v. Consejo de Titulares y otros*, 216 DPR __ (2025), 2025 TSPR 123 (opinión de 25 de noviembre de 2025); *Vázquez et al. v. DACo*, 2025 TSPR 56 (opinión del 21 de mayo de 2025), 216 DPR ___ (2025); *Beltrán Cintrón et al. v. ELA et al.,* 204 DPR 89, 101 (2020).
[21] *Ayala Hernández v. Consejo Titulares*, 190 DPR 547, 559 (2014).
[22] *JJJ Adventure v. Consejo de Titulares y otros, supra*; *Ayala Hernández v. Consejo Titulares*, supra.
[23] *DACo v. AFSCME,* 185 DPR 1, 12 (2012).
[24] *Íd.*; *Col. Médicos et als. v. Com. Seguros et al.*, 201 DPR 362, 372 (2018), citando a *Depto. Justicia et al. v. Jiménez et al.,* 199 DPR 293, 309 (2017).
[25] 3 LPRA sec. 341b.

consumidores y se concederán los remedios pertinentes conforme al derecho aplicable.[26]

Luego de la aprobación de la ley que creó al DACo, el legislador amplió el ámbito jurisdiccional de esa agencia para que atendiera ciertos asuntos relativos a la Ley Núm. 129-2020, conocida como la *Ley de Condominios de Puerto Rico,* 31 LPRA sec. 1921 *et seq.* Dicho estatuto le confirió jurisdicción al DACo para adjudicar las querellas presentadas por los titulares de apartamentos destinados a vivienda.[27] A tenor con la delegación legislativa, se puede presentar ante el DACo, las acciones de impugnación de los acuerdos del Consejo de Titulares, de las determinaciones, actuaciones u omisiones del Director o de la Junta de Directores, relacionadas con la administración del inmueble cuyos apartamentos estén dedicados a vivienda.[28]

No obstante, esa jurisdicción exclusiva conferida al DACo no se extiende a toda posible causa de acción dimanante de un condominio con al menos un apartamento de uso residencial. Conforme a la Regla 23 del *Reglamento de Condominios*, Núm. 9386 de 6 de junio de 2022, creado a tenor con las facultades delegadas a la agencia, "quedarán excluidas de la jurisdicción del DACO, las querellas entre titulares o cuando el Consejo de Titulares, el Director o la Junta de Directores presente una reclamación contra uno o varios titulares o residentes del condominio. La jurisdicción para ventilar estas acciones corresponderá al Tribunal de Primera Instancia".

### III.

En su recurso, la señora Rivero Crespo alega que incidió el DACo al desestimar la querella por falta de jurisdicción en cuanto al

---

[26] 3 LPRA sec. 341e (d).
[27] Artículo 65 de la *Ley de Condominios de Puerto Rico*, 31 LPRA sec. 1923j; *Ayala Hernández v. Consejo Titulares*, supra, pág. 563.
[28] Artículo 66 de la *Ley de Condominios de Puerto Rico,* 31 LPRA sec. 1923k.

Consejo de Titulares del Condominio y su Junta de Directores. Manifiesta que los daños reclamados no se limitan a un acabado interior dentro de una unidad de vivienda privada, sino que se trata del deterioro progresivo del techo y la losa, los cuales, a su juicio, son elementos estructurales del inmueble, destinados a un uso comunal y cuya reparación corresponde al Consejo de Titulares del Condominio. Esgrimió que presentó su petición de restauración ante el órgano directivo y no fue atendida. En relación con ello, expuso que, a tenor con la norma jurídica vigente, el DACo es el foro con jurisdicción para atender los reclamos en los que se impugnan las acciones u omisiones del órgano directivo del inmueble, como lo fue la negativa del Consejo de Titulares del Condominio y su Junta de Directores a atender su reclamo de reparación.

En cuanto al Consejo de Titulares del Condominio y su Junta de Directores, el DACo concluyó en su *Resolución* que la señora Rivero Crespo no había presentado reclamación alguna en contra de éstos, ya que para lo único que los mencionó en la querella fue para cuestionar sobre quién recaía la responsabilidad de cerrar la llave de paso en caso de una filtración, y no para impugnar alguna determinación acción u omisión de esos cuerpos directivos. El foro administrativo entendió que emitir algún pronunciamiento en cuanto a dicho cuestionamiento constituiría una opinión consultiva, ya que la propia querellante había admitido que las filtraciones provenían del apartamento 810 y habían cesado desde el 22 de julio de 2024. Por tanto, resolvió que la controversia se había tornado académica, privando de jurisdicción al foro administrativo para entender en el asunto. *Veamos.*

Del expediente ante nuestra consideración y de las propias admisiones de la señora Rivero Crespo se desprende que ésta reclamó ante el DACo una compensación por los daños que le ocasionó las filtraciones provenientes del apartamento de otro

titular, área que no constituye un elemento común del condominio. Evidencia de ello es que tan pronto se notificó el problema al titular del apartamento 810, las filtraciones cesaron. En efecto, el DACo destacó en su resolución que la querellante no pudo precisar si las filtraciones provenían de un elemento común. Por tanto, tal cual resolvió la agencia administrativa, la controversia es una estrictamente entre titulares que, a tenor con la Regla 23 del *Reglamento de Condominios,* supra, está excluida de la jurisdicción del DACo. Dicha regla expresamente dispone que las causas de acción entre los titulares corresponde ventilarlas ante el Tribunal de Primera Instancia, y no ante el DACo. Tratándose de una reclamación entre copropietarios, el Consejo de Titulares y su Junta de Directores no es responsable de remediar el problema de filtraciones, por lo que no cabe hablar de que alguno de los cuerpos directivos hubiera incurrido en omisión o acto reprochable. De hecho, de las determinaciones de hechos consignadas en la resolución recurrida se desprende que el Condominio atendió diligentemente la reclamación, pues, una vez la señora Rivero Crespo notificó el problema de filtraciones a la administradora del condominio, se notificó al titular del apartamento involucrado y éste corrigió el problema.

Por otro lado, y contrario a lo argüido por la señora Rivero Crespo, en forma alguna el DACo sostuvo su determinación en el uso destinado -común o limitado- de la losa y el techo afectados por las filtraciones objeto de la reclamación. Para llegar a su decisión, el DACo tomó en consideración que, siendo el propósito de la querella reclamar compensación a otro titular por los daños ocasionados por las filtraciones provenientes del apartamento 810 - quedando excluidas de la jurisdicción de la agencia las reclamaciones entre propietarios- y en vista de que las filtraciones cesaron desde el 22 de julio de 2024, la controversia sobre la

presencia de filtraciones se había tornado académica. En este punto, coincidimos con el DACo en cuanto a que la controversia en torno a la existencia de filtraciones en el apartamento de la señora Rivero Crespo se tornó académica[29], dada la propia admisión de la querellante de que el problema se había subsanado. Conforme coligió el foro administrativo, solo queda por resolver la reclamación en daños -presuntamente continuos- entre copropietarios, la cual, corresponde ventilar ante el Tribunal de Primera Instancia.

En virtud de lo anterior, actuó correctamente el DACo al declararse sin jurisdicción y decretar el cierre y archivo de la querella de epígrafe, pues surge claramente de la normativa jurídica que es el Tribunal de Primera Instancia el organismo con jurisdicción para atender la reclamación en daños y perjuicios del presente caso. La señora Rivero Crespo no rebatió la presunción de corrección que reviste la decisión del DACo. Por tanto, procede confirmar la resolución recurrida.

**IV.**

Por los fundamentos que anteceden, *confirmamos* la resolución recurrida.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[29] Un caso es académico cuando se trata de obtener un fallo sobre una controversia inexistente, o una sentencia sobre un asunto que por alguna razón no podrá tener efectos prácticos. *Bhatia Gautier v. Gobernador et al*, 199 DPR 59, 73 (2017). Una vez se determina que un pleito es académico, los tribunales están impedidos de considerarlo en sus méritos. *U.P.R. v. Laborde Torres y otros I,* 180 DPR, 281 (2010).